1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

ROGER HULL,                          )        3:11-cv-00535-LRH (WGC)
                                     )
          Plaintiff,                 )        **REPORT AND RECOMMENDATION**
                                     )        **OF U.S. MAGISTRATE JUDGE**
     vs.                             )
                                     )
GREG COX, et al.,                    )
                                     )
          Defendants.                )
                                     )
_____)

     This Report and Recommendation is made to the Honorable Larry R.  Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion to Dismiss. (Doc. #15.)[1] Plaintiff did not oppose the motion. Instead, Plaintiff filed a Motion to Strike Defendants' Motion to Dismiss (Doc. # 21) and Motion for Sanctions (Doc. # 22), which are also before the court.  Defendants opposed both of Plaintiff's motions.  (Doc. # 24 (Opp.  to Mtn.  to Strike), Doc. # 25 (Opp.  to Mtn.  for Sanctions)). Defendants filed an errata to their motion on April 23, 2012 (Doc. # 31, Doc. # 31-1), and a hearing was held on Defendants' motion on April 30, 2012. After a thorough review, the court recommends that Defendants' motion (Doc. # 15) be granted, and Plaintiff's motions  (Doc. # 21 and Doc. # 22) be denied.

## I. BACKGROUND

     Plaintiff Roger Hull (Plaintiff), a *pro se* litigant in custody of the Nevada Department of Corrections (NDOC), brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl.

---

[1] Refers to court's docket number.

(Doc. # 7) at 1.) At all relevant times, Plaintiff has been housed at Northern Nevada Correctional Center (NNCC). (*Id.*) Defendants are Greg Cox, Jack Palmer, Adam Watson, Lisa Walsh, Jennifer Cardwell, and William Lummus. (*Id.* at 1-4.) Plaintiff filed this action in the First Judicial District Court in and for Carson City on June 6, 2011, and it was subsequently removed by Defendants. (Doc. # 1.)

In Counts I and II, Plaintiff alleges that he is a baptized member of the Community of Christ and has practiced this religion for forty-four (44) years. (Doc. # 7 at 6, ¶¶ 1-2.) He asserts that Defendants Cox, Palmer, Walsh and Watson refuse to recognize his religion, and he is not allowed to receive any materials from Community of Christ, including audio recordings of their prophet's yearly address. (*Id.* at ¶¶ 3-10.) Plaintiff claims that Defendants have never stated a reason for refusing to recognize his religion, and have refused to consider any less restrictive alternatives for Plaintiff to be able to practice his religion. (*Id.* at 8, ¶¶ 16-17.) In addition, Defendants have told him that Latter Day Saints (LDS), which is recognized by NDOC, is "close enough." (*Id.* at ¶ 17, 10 at ¶ 8.) Plaintiff alleges that Defendants have allowed other inmates to start non-denominational services, but because Plaintiff has declared a specific denomination that is not recognized by NDOC, he is denied a service time slot and holy communion, although he has identified Community of Christ volunteers who would come to NNCC. (*Id.* at 9-10, ¶¶ 2-7.) On screening, the court determined that Plaintiff states colorable claims related to his religious rights under the First Amendment's free exercise clause; the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a); and the Fourteenth Amendment's equal protection clause. (Doc. # 6 at 6.)

In Count III, Plaintiff alleges that it took him seven (7) years to get his adult daughter on his approved visitors list. (Doc. # 7 at 12, ¶ 4.) Apparently, Plaintiff is a sex offender who molested his daughter. (*Id.* at ¶ 3.) In 2010, his daughter, her husband-who was about to be deployed to Afghanistan-and their child traveled from Fort Lewis, Washington, in order to visit Plaintiff at NNCC. (*Id.* at 12-13, ¶¶ 5-6.) When they arrived, Plaintiff alleges that Defendants Cardwell and Lummus told Plaintiff he would not be allowed to see his daughter and "as long

1  as they had anything to say about it he would never get to see her because she was a former
2  victim of his." (*Id.* at 13, ¶ 7.) Plaintiff claims that Defendants Cox, Palmer, Watson, and Walsh
3  had personal knowledge that the two (2) officers mistreat inmates generally, and sex offenders
4  in particular, and did nothing to stop them and took no action when complaints were filed. (*Id.*
5  at ¶¶ 9-10.) On screening, the court determined that Plaintiff states a colorable claim for
6  violation of his equal protection rights under the Fourteenth Amendment in Count III. (Doc.
7  # 6 at 6.)

8      Defendants now move to dismiss Plaintiff's Complaint for failure to exhaust available
9  administrative remedies. (Doc. # 15.) Plaintiff did not file an opposition, despite being given
10  an extension to do so. (*See* Doc. # 19 (granting Plaintiff an extension up to and including
11  March 16, 2012, to file his response to Defendants' motion).)  Instead, Plaintiff filed a Motion
12  to Strike Defendants' Motion to Dismiss (Doc. # 21) and Motion for Sanctions (Doc. # 22).
13  Plaintiff's Motion to Strike includes arguments that would have been more appropriately raised
14  in a response to Defendants' Motion to Dismiss. Accordingly, while the court will address the
15  merits of the Motion to Strike, it will also construe the arguments therein as Plaintiff's response
16  to Defendants' Motion to Dismiss.

17      **II.  PLAINTIFF'S MOTION TO STRIKE AND MOTION FOR SANCTIONS**
18  **A.  Motion to Strike (Doc. # 21)**

19      Plaintiff moves to strike Defendants' Motion to Dismiss, arguing that Defendants'
20  motion contains false information because: (1) Defendants argue that Plaintiff failed to exhaust
21  his administrative remedies, yet Defendants exceeded the grievance response time set forth in
22  Administrative Regulation (AR) 740; and (2) Defendants waived their right to assert
23  exhaustion as a defense when they removed this action to federal court.  (Doc. # 21 at 2-3.)

24      Plaintiff's arguments are more appropriately asserted in a response to Defendants'
25  motion, and not in a motion to strike. Defendants are entitled to bring an unenumerated
26  motion to dismiss for failure to exhaust administrative remedies.  *See Wyatt v. Terhune*, 315
27  F.3d 1108, 1119 (9th Cir.2003). Plaintiff's assertion that Defendants have presented false

28                                                    3

information in their motion is simply not accurate.  The motion and supporting exhibits do not conceal the fact that some of the response times provided for in AR 740 were exceeded. (Doc. # 15-1, Doc. # 15-2.)

Plaintiff's argument that Defendants waived their exhaustion defense by removing the action to federal court (Doc. # 21 at 3) is without merit. The failure to exhaust administrative remedies is treated as a matter in abatement and is appropriately raised in an unenumerated Rule 12(b) motion, as Defendants have done here. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003).

Finding no merit in the arguments asserted in Plaintiff's Motion to Strike (Doc. # 21), the court recommends that it be denied.

**B.  Motion for Sanctions (Doc. # 22)**

Plaintiff seeks sanctions against Defendants on the ground that they filed a motion to dismiss containing false information. (Doc. # 22.) As indicated above, the court finds that Defendants' motion does not contain false information and finds no merit in Plaintiff's motion to strike. Therefore, Plaintiff's Motion for Sanctions (Doc. # 22) should be denied.

### III.  LEGAL STANDARD-UNENUMERATED MOTION TO DISMISS

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001). The Supreme Court recently clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

4

This court has interpreted Justice Alito's majority opinion in *Woodford* as setting forth two tests for "proper exhaustion": (1) the "merits test," satisfied when a plaintiff's grievance is fully addressed on the merits by the administrative agency and appealed through all the agency's levels, and (2) the "compliance test," satisfied when a plaintiff complies with all critical procedural rules and deadlines. *Jones v. Stewart*, 457 F. Supp. 2d 1131, 1134 (D. Nev. 2006). "A finding that a plaintiff has met either test is sufficient for a finding of 'proper exhaustion'. Defendants must show that Plaintiff failed to meet both the merits and compliance tests to succeed in a motion to dismiss for failure to exhaust administrative remedies." *Id.*

The failure to exhaust administrative remedies is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.2003). Failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of raising and proving failure to exhaust. *Id.* A court, in deciding a motion to dismiss based on exhaustion, may look beyond the pleadings and decide disputed issues of fact without converting the motion into one for summary judgment. *Id.* (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1988) (per curiam)). If a court concludes that the prisoner bringing a suit has failed to exhaust nonjudicial remedies, "the proper remedy is dismissal of the claim without prejudice." *Id.* at 1120.

During the time period in question, for prisoners within the NDOC system, exhaustion of administrative remedies required compliance with the inmate grievance procedure set forth in NDOC Administrative Regulation (AR) 740. (Doc. # 15 at 3, Doc. # 15-1 (Ex. A3).)[2] The administrative process consisted of: (1) an informal level grievance; (2) a first level grievance appealing the informal grievance decision; and (3) a second level grievance appealing the first level grievance decision. (Doc. # 15-1 at 55-58.)

The time limit for a response to an informal or first level grievance is forty-five days,

---

[2] As set forth herein, the court finds that only the version of AR 740 effective February 12, 2010, through the present, applies to Plaintiff's claims.

while the time limit for a response to a second level grievance is sixty days, each of which is calculated from the date the grievance is received by prison officials. (Doc. # 15-1 at 43-45; *see also* Doc. # 35 at 32:4-22.)

AR 740 goes on to provide:

> 7. Except as required for the initial filing of an Informal Grievance, time limits shall begin to run from the date an inmate receives a response for appeal and the date the Department's respondent receives the appeal.
> 8. An overdue grievance response at any level is not an automatic finding for the inmate.
>     A. The response must be completed, even if it is overdue.
>     B. The inmate may proceed to the next grievance level, except at the Second Level, if a response is overdue.
>     C. The overdue response does not count against the inmate's timeframe for an appeal if he awaits the response before initiating an appeal.

(Doc. # 15-1 at 41, 54.)

At the hearing on this matter, the defense presented two witnesses, Defendant Walsh and Monica Navarro, to describe NDOC's grievance procedures in further detail. (*See* Trans. of June 4, 2012 hearing (Doc. # 35) at 2:18-25, 3:4-25, 4:3-6.) Specific details of their testimony are referenced below, when relevant.

Ms. Walsh is currently the Associate Warden of Programs at NNCC. (Doc. # 35 at 13:24-25, 14:1-2, 15:4-11.) She testified that grievances at NNCC are gathered Monday through Friday, excluding holidays. (*Id.* at 16:14-16.)

Ms. Navarro is the Administrative Assistant to Ms. Walsh. (Doc. # 35 at 4:3-6, 28:14-17.) She is in charge of grievance processing, which includes receiving, entering, copying, signing, filing, and returning inmate grievances. (*Id.* at 28:18-24.) With respect to the grievance process she testified that the date that the grievance coordinator signs the grievance is the date the grievance is actually received, but the "RECEIVED" stamp actually indicates the date the grievance is entered into NOTIS. (*Id.* at 29:9-15, *see also* by way of example, Doc. #15-2 at 43.) She acknowledged there may be a delay between these dates. (*Id.* at 29:16-22.)

///

///

6

# IV.  DISCUSSION

## A.  Counts I & II (religious rights)

Defendants identify three grievances related to Plaintiff's religious rights claims: 2006-29-18545, 2006-28-96921, 2006-29-02861. (Doc. # 15 at 4, Navarro Decl. at 11, ¶ 6 (identifying these as the only grievances related to Plaintiff's claims).)

### i.  Grievances

#### a.  Grievance 2006-29-18545

Plaintiff's informal level grievance, is dated February 27, 2011, and relates to a three-day religious-based program that had been cancelled. (Doc. # 15-2 (Ex. C) at 26-27.)

#### b.  Grievance 2006-28-96921

Plaintiff filed an informal level grievance dated April 18, 2010, stating that he is a member of the Community of Christ, otherwise known as the Reorganized Church of Jesus Christ of Latter Day Saints, and he put in a request to have his religion recognized by NDOC, and received no response. (Doc. # 15-2 at 36-38.) NNCC officials received it on April 21, 2010 (Doc. # 31-1 at 5, Doc. # 35 at 16:17-25, 17:1-8), and it was denied at the informal level on May 21, 2010.  (Doc. # 15-2 at 35, 36, Doc. # 31-1 at 5, Doc. # 35 at 17:9-11.) The response states that Chaplain Hummel confirmed Plaintiff's religious request was forwarded to the Religious Review Team for review, and that the Religious Review Team was in the process of scheduling their next meeting to review the requests submitted. (Doc. # 15-2 at 35, 36, Doc. # 31-1 at 5.) Plaintiff was instructed to keep in contact with Chaplain Hummel regarding the outcome of his request.  (*Id*.)

Plaintiff submitted a first level grievance dated May 21, 2010, stating that his religious request was to be responded to within 120 days, and it had been over a year. (Doc. # 15-2 at 40-41, Doc. # 35 at 5:22-25, 6:1.)  It was received by NNCC personnel on May 24, 2010.  (*Id*. at 6:1-2, 19:14-15.) The first level grievance was input into the Nevada Offender Tracking Information System (NOTIS) on May 27, 2010, as designated by the stamp on the grievance. (*Id*. at 6:4-5.) Plaintiff received the answer to the first level grievance on April 11, 2011, just

1  under a year later. (*Id.* at 6:6-7, 19:16-18.) The response encouraged Plaintiff to continue to

2  remain in contact with Chaplain Hummel regarding the Religious Review Team's

3  determination of his pending request. (Doc. # 15-2 at 39.)

4       Plaintiff filed a second level grievance dated April 11, 2011, stating that there is no

5  Religious Review Team committee. (Doc. # 15-2 at 43-44, Doc. # 35 at 6:12-15.) NNCC

6  personnel received it on April 12, 2011. (Doc. # 31-1 at 5, Doc. # 35 at 6:22-23.) It was entered

7  into NOTIS on June 26, 2011. (*Id.* at 6:24-25.) It was denied on July 1, 2011. (Doc. # 31-1 at

8  42, Doc. # 35 at 5:19-21.) The response indicates that in accordance with AR 810, a Religious

9  Review Team had been selected, meetings had been scheduled, and Plaintiff's request would

10  be brought to them for a decision. (Doc. # 31-1 at 42.) Plaintiff was instructed to check with

11  Chaplin Hummel for a final decision. (*Id.*)

12       **c. Grievance 2006-29-02861**

13       Plaintiff filed an informal level grievance dated July 31, 2010, regarding mail from his

14  church that was deemed unauthorized. (Doc. # 15-2 at 47-48.) The informal level grievance

15  was denied as resolved because the mail was picked up from the mail room and given to

16  Plaintiff by Chaplain Hummel. (*Id.* at 46.)

17      **ii. Analysis**

18       The court finds that the only grievance applicable to Plaintiff's claims in Counts I and

19  II is grievance 2006-28-96921**.** (Doc. # 15-2 at 35-44.) Grievance 2006-29-18545 does not

20  apply because it relates to the cancellation of a specific three-day religious event. Grievance

21  2006-29-02861 does not apply because it was resolved at the informal level.

22       Accordingly, the court must determine whether Plaintiff exhausted his administrative

23  remedies with respect to grievance 2006-28-96921. The grievance process took place from

24  April 18, 2010 (the date of the informal level grievance) and July 1, 2011 (the date of the

25  response to the second level grievance). Therefore, only the version of AR 740 effective

26  February 12, 2010, to the present applies to this grievance. (*See* Doc. # 15-1 Ex. A3.)

27       Defendants argue that Counts I and II must be dismissed because Plaintiff failed to

28

1   exhaust his administrative remedies prior to filing this action. (Doc. # 15 at 4-5.)

2       Plaintiff argues that Defendants' motion must fail because Defendants did not comply

3   with AR 740, which requires that prison officials respond to informal and first level grievances

4   within forty-five (45) days, and within sixty (60) days of receiving a second level grievance.

5   (Pl.'s Mot. to Strike (Doc. # 21) at 2, ¶ 2.)

6       Plaintiff's informal level grievance is dated April 18, 2010. (Doc. # 15-2 at 36-38.) It was

7   received by NNCC officials on April 21, 2010. (Doc. # 31-1 at 5, Doc. # 35 at 16:17-25, 17:1-8.)

8   It was denied on May 21, 2010.  (Doc. # 15-2 at 35-36, Doc. # 31-1 at 5, Doc. # 35 at 17:9-11.)

9   The prison's response is within the forty-five day time period prescribed by AR 740.

10      Plaintiff's first level grievance is dated May 21, 2010. (Doc. # 15-2 at 40-41, Doc. # 35

11  at 5:22-25, 6:1.)  It was received by NNCC personnel on May 24, 2010.  (Doc. # 35 at 6:1-2,

12  19:14-15.)  It was input into NOTIS on May 27, 2010.  (Doc. # 35 at 6:4-5.)  Plaintiff received

13  the response denying the grievance on April 11, 2011, just under a year later. (Doc. # 35 at 6:6-

14  7, 19:16-18.)

15      Defendants exceeded the forty-five day response time with respect to the first level

16  grievance; however,  AR 740 permitted Plaintiff to proceed to the second level grievance as

17  soon as the response to the first level grievance became overdue.  (*See* Doc. # 15-2 at 54, *see*

18  *also* Doc. # 35 at 21:25, 22:1-7.)  Plaintiff declined to do so, and instead waited until he received

19  the first level response to proceed to the second level.  (*See* Doc. # 35 at 22:6-8.) Because

20  Plaintiff could have proceeded to the second level as soon as the first level response became

21  overdue, Plaintiff should be precluded from contesting the delay in the first level response.

22      Plaintiff's second level grievance is dated April 11, 2011. (Doc. # 15-2 at 43-44,

23  Doc. # 35 at 6:12-15.)  It was received by NNCC personnel on April 12, 2011.  (Doc. # 31-1 at 5,

24  Doc. # 35 at 6:22-23.)  It was entered into NOTIS on June 26, 2011.  (Doc. # 35 at 6:24-25.)

25  The second level grievance was denied on July 1, 2011.  (Doc. # 31-1 at 42, Doc. # 35 at 5:19-21.)

26  Defendants should have responded to the second level grievance within sixty days, on or before

27  June 11, 2011.  (*See* Doc. # 15-1 at 45.)  Thus, Plaintiff had to wait until the grievance process

28

1   should have been completed, or until June 11, 2011, to proceed with filing a complaint. (*Id.*,

2   *see also* Doc. # 35 at 11:4-11.)

3       Plaintiff originally filed this action in the First Judicial District Court of the State of

4   Nevada in and for Carson City on June 6, 2011, prior to the date the grievance process should

5   have been completed. (*See* Doc. # 1 at 2, Doc. # 1-2.)

6       The Ninth Circuit has made it clear that the PLRA requires exhaustion *prior* to

7   initiation of the lawsuit. *See McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002) (per

8   curiam) (exhaustion requirement does not permit prisoner to file complaint addressing non-

9   exhausted claims even if he exhausts while case is pending); *see also Vaden v. Summerhill*,

10  449 F.3d 1047, 1050-51 (9th Cir. 2006) ("The bottom line is that a prisoner must pursue the

11  prison administrative process as the first and primary forum for redress of grievances. He may

12  initiate litigation in federal court only after the administrative process ends and leaves his

13  grievances unredressed. It would be inconsistent with the objectives of the statute to let him

14  submit his complaint any earlier than that."). Allowing Plaintiff to proceed with claims without

15  having exhausted *prior to* filing his complaint would create an end-run around the PLRA,

16  which provides that "[n]o action shall be brought with respect to prison conditions...until such

17  administrative remedies as are available are exhausted." 28 U.S.C. § 1997(e); *see also Vaden*,

18  449 F.3d 1050-51*; McKinney,* 311 F.3d at 1199-1201.

19      Because Plaintiff failed to exhaust his administrative remedies *prior* to filing his

20  Complaint, Counts I and II should be dismissed without prejudice.[3]

21  **B. Count III (visitation)**

22      Defendants identify two grievances related to Plaintiff's visitation claim: 2006-28-81638

23  and 2006-29-16061. (Doc. # 15 at 4, Navarro Decl. at 11, ¶ 6 (identifying these as the only

24  grievances related to Plaintiff's claims).)

25

26       [3] The court notes that Defendants elected to proceed with this motion when it was pointed out that these

27  claims are not barred by the statute of limitations, and Plaintiff is entitled to file a new action with respect to these
    claims because the grievance process has been completed. (*See* Doc. # 35 at 11:23-25, 12:1-11.)

28

1

### i.  Grievances

2

#### a.  Grievance 2006-28-81638

3   Plaintiff filed an informal level grievance, stating that since February 18, 2009, he has

4   sent kites to visiting to gain a list of approved visitors. (Doc. # 15-2 at 51-52.) Plaintiff states

5   that the first two kites went unanswered, and with respect to the third, he received notice that

6   his brother's application was never received. (*Id*.) He requested to view his visiting file to see

7   if there were any restrictions and to see who is approved and who is pending. (*Id*.) The prison

8   responded on September 9, 2009, returning the grievance because it was not signed and dated.

9   (*Id*. at 50.)  It appears from the records submitted that Plaintiff did not pursue this grievance.

10

#### b.  Grievance 2006-29-16061

11   Plaintiff filed an informal level grievance dated December 22, 2010, regarding his

12   daughter being denied visitor status despite being approved to visit. (Doc. # 15-2 at 55-57.) The

13   informal level grievance was received on December 29, 2010.  (*Id*. at 55, Doc. # 35 at 37:3-10.)

14   It was entered into NOTIS on March 2, 2011.  (*Id*. at 55, Doc. # 35 at 38:1-5.) The prison

15   denied the informal level grievance on May 6, 2011, stating that visitation is a privilege and not

16   a right.  (Doc. # 15-2 at 54, 55.)

17   Plaintiff filed a first level grievance dated May 20, 2011, asserting that he was denied his

18   daughter's visit because of his status as a sex offender. (Doc. # 15-2 at 64-66.)  It was received

19   by prison officials on May 27, 2011. (*Id*. at 64.) It was denied in a response dated August 16,

20   2011. (*Id*. at 63.)

21   Plaintiff filed a second level grievance dated August 30, 2011, stating that visiting with

22   his daughter was never suspended, and the prison never had authority to deny the approved

23   visit. (Doc. # 15-2 at 68-69.) It was received by prison officials on September 2, 2011.  (*Id*. at

24   68.) On November 11, 2011, Plaintiff agreed to an extension of time until December 14, 2011,

25   for the prison to respond to the second level grievance. (*Id*. at 62.) The second level grievance

26   was denied on December 16, 2011.  (*Id*. at 67.)  The response states that visitation privileges

27   were suspended pending review and were reinstated after clarification was received. (*Id*.)

28

11

### ii. Analysis

Because Plaintiff failed to pursue grievance 2006-28-81638 (Doc. # 15-2 at 50-52), grievance 2006-29-16061 is the only grievance relevant to Plaintiff's visitation claim. The grievance process took place from December 22, 2010 through December 16, 2011, and therefore the version of AR 740 effective February 12, 2010, to the present, applies to this claim.

Plaintiff's informal level grievance is dated December 22, 2010, and was received on December 29, 2010. (Doc. # 15-2 at 55-57.) It was denied on May 6, 2011. (*Id.* at 54.) The reason for the gap between the grievance and receipt stamp is not clear, but AR 740 requires that the time period for a response be calculated from the date of receipt. (Doc. # 15-1 at 54.) Plaintiff is correct that the time that Defendants took to respond to the grievance, calculated from the date the grievance is received, still exceeds the forty-five day time period prescribed in AR 740. However, under AR 740, Plaintiff could have proceeded to the first level grievance as soon as the informal level response became overdue. (Doc. # 15-2 at 54.)

Plaintiff chose not to do so, and his first level grievance is dated May 20, 2011. (Doc. # 15-2 at 64-66.) It was received on May 27, 2011. (*Id.* at 64.) The response would have been due within forty-five days, or by July 11, 2011. The response is dated August 16, 2011. (Doc. # 15-2 at 63.) Again, Plaintiff was permitted to proceed to the second level as soon as the response became overdue. (Doc. # 15-1 at 54.)

Plaintiff chose not to do so, and instead, filed a second level grievance dated August 30, 2011. (Doc. # 15-2 at 68-69.) It was received on September 2, 2011. (*Id.* at 68.) While there is a gap between the date of receipt of the grievance, September 2, 2011, and the response, December 16, 2011, Plaintiff agreed to an extension of time, until December 14, 2011, for the prison to respond to the second level grievance. (*Id.* at 62.) The second level grievance was denied on December 16, 2011. (*Id.*)

While the second level grievance exceeded the agreed upon response date by two days, it is clear that Plaintiff filed his Complaint on June 6, 2011 (Doc. # 1 at 2, Doc. # 1-2), some six

months before the grievance process should have been completed with respect to this claim. As indicated above, Plaintiff was required to exhaust his administrative remedies *prior* to bringing his lawsuit. "He may initiate litigation in federal court only after the administrative process ends and leaves his grievances unredressed." *Vaden*, 449 F.3d at 1050-51.

Because the exhaustion process was ongoing when Plaintiff filed his Complaint, Count III should be dismissed without prejudice.

The court has recommended dismissal without prejudice of Plaintiff's remaining claims. As a result, Plaintiff's pending Motion for Preliminary Injunction (Doc. # 17), Defendants' motion seeking a stay of the briefing schedule with respect to Plaintiff's Motion for Preliminary Injunction (Doc. # 20), and Plaintiff's Motion for Hearing on Plaintiff's Motion for Preliminary Injunction (Doc. # 34) should be denied as moot.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order as follows:

(1) **GRANTING** Defendants' Motion to Dismiss (Doc. # 15) and **DISMISSING WITHOUT PREJUDICE Counts I, II, and III**;

(2) **DENYING** Plaintiff's Motion to Strike (Doc. # 21);

(3) **DENYING** Plaintiff's Motion for Sanctions (Doc. # 22);

(4) **DENYING AS MOOT** Plaintiff's Motion for Preliminary Injunction (Doc. # 17);

(5) **DENYING AS MOOT** Defendants' Motion to Stay (Doc. # 20);

(6) **DENYING AS MOOT** Plaintiff's Motion for Hearing on Plaintiff's Motion for Preliminary Injunction (Doc. # 34).

///
///
///
///
///
///

13

The parties should be aware of the following:

1.      That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt.  These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: June 6, 2012.


_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE

14